IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBIN DAWSON,

       Plaintiff,

v.                                          Civil Action No. 5:11CV15
                                                         (STAMP)

WHEELING ISLAND GAMING, INC.
d/b/a Wheeling Island Hotel Casino
Racetrack, a Delaware corporation,

       Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  Procedural History

The plaintiff, a then fifty-year old African American female, was hired by the defendant on or about November 28, 2007 to work at Wheeling Island Hotel Casino Racetrack ("Wheeling Island") as a table games floor supervisor at a pay rate of $19.00 per hour, with an alleged understanding that her ultimate pay scale would be determined at a later date. After she began her employment, Ms. Dawson discovered that other similarly situated employees were being compensated at a rate of $21.75 per hour, and she voiced her displeasure with this fact to the human resources department, as well as to her supervisor, Eric Wright. Shortly thereafter, all newly-hired table games supervisors hired at the $19.00 per hour rate were given raises to equal the $21.75 per hour rate that some were already being paid.

Following this pay raise, the plaintiff remained employed as a table games supervisor until her termination following an incident which occurred on September 6, 2008. Ms. Dawson claims that, for the duration of her employment at Wheeling Island following her complaints about the alleged compensation disparity, she felt that the working environment was "uncomfortable." Further, throughout this time, Ms. Dawson was subject to multiple associate counseling sessions and written disciplinary warnings which were the result of her alleged excessive absenteeism and unprofessional behavior.

In August 2008, Ms. Dawson underwent "an operation" during which she says that she suffered a mini-stroke. She claims that she had also been diagnosed with hypertension following this medical procedure. The plaintiff alleges that, upon her return to work on September 6, 2008, she informed her supervisor that she was feeling dizzy and requested the opportunity to sit-down during her shift, but was told that she needed to go where she was told. Ms. Dawson was ultimately terminated following the confrontation with her supervisors that day.

The plaintiff filed this civil action in the Circuit Court of Ohio County, West Virginia. In her complaint, she seeks compensatory and punitive damages, as well as attorney's fees and costs from the defendant as a result of her termination. She alleges state claims of racial harassment and retaliation,

disability discrimination, hostile workplace, breach of contract, age discrimination and the tort of outrage.  The defendant removed the action to this Court on the basis of diversity jurisdiction and following discovery, filed a motion for summary judgment.

This motion is now fully briefed and ripe for disposition by this Court.  For the reasons stated below, the defendant's motion for summary judgment will be granted and this civil action will be dismissed.

## II.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the

3

United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256.   "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v.</u> <u>Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens</u> <u>v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

     In <u>Celotex</u>, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the

4

motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III.   Discussion

The plaintiff's complaint contains six substantive counts against the defendant,[1] and all are subject to the defendant's motion for summary judgment.  This Court will analyze each of the counts in the order in which they were raised by the plaintiff in her complaint.

A.   Count I

Count I alleges wrongful discharge due to race, and retaliatory discharge, both seemingly raised as claims under West Virginia common law, and claiming violations of the substantial public policy of the State of West Virginia.  West Virginia recognizes the concept of "employment at will" wherein an employer may terminate an employee for whatever reason it so chooses, and even for no reason at all, so long as the reason is not an illegal one. Feliciano v. 7-Eleven, Inc., 210 W. Va. 740 (2001).  However, this general rule is tempered by the "principle that where the employer's motivation for the discharge is to contravene some substantial public policy, then the employer may be liable to the employee for damages occasioned by this discharge." Harless v. First Nat'l Bank of Fairmont, 162 W. Va. 116, syl. pt. 1 (1978).

---

[1]Count VII of the complaint only alleges damages, and thus does not state a separate cause of action against the defendant.

Substantial public policy is identified through examination of "established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Birthisel v. Tri-Cities Health Servs. Corp., 188 W. Va. 371, syl. pt. 2 (1992). Accordingly, based upon the legislative enactments of the United States Congress in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and of the West Virginia Legislature in the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 et seq., this Court finds that, if proven as outlined by those statutes, termination motivated by racial considerations, as well as retaliatory discharge, are both against the substantial public policy of the State of West Virginia.

The burden of sustaining such claims under either of these statutes follows the burden shifting framework established by McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-04 (1973). Ford Motor Credit Co. v. W. Va. Human Rights Comm'n, 225 W. Va. 766, 776, 696 S.E. 282, 292 (2010). Thus, initially, the plaintiff must present a prima facie case, showing sufficient evidence to create a presumption that her termination was motivated by her protected status.[2] See Birthisel, 188 W. Va. at 377 (quoting Powell v. Wyoming Cablevision, Inc., 184 W. Va. 700 (1991); and Ford Motor Credit Co., 225 W. Va. 776-77. While this burden is not an

---

[2]Or in the case of retaliatory discharge, her protected activity.

6

"onerous" one, it must be satisfied initially in order for a discrimination case to move forward.  Id. at 777.

When a prima facie case is established, an inference of discriminatory conduct arises and the burden shifts to the defendant to "defend the discharge by showing a legitimate, nonpretextual, nonretaliatory [or nondiscriminatory] reason ["LNDR"] for its action." Birthisel, 188 W. Va. at 377.  This LNDR is not required to be fair or good or even reasonable, so long as it is not a discriminatory or retaliatory reason.  Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).  Further, the defendant is only held to a burden of production at this stage, and when satisfied, any inference of discrimination created by the plaintiff's prima facie case drops away.  Should the defendant produce a LNDR, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered LNDR is pretext, and that the actual reason for the adverse employment action is as the plaintiff contends.  Ford Motor Credit, 225 W. Va. at 777.

1.   Wrongful Discharge -- Race

This Court finds that the plaintiff has failed to establish a prima facie case of wrongful discharge based upon race.  As described above, in order to establish a prima facie case as to this claim, the plaintiff must present sufficient evidence to

7

create an inference that her termination was causally linked to her status as an African American.  This, she has failed to accomplish.

In support of her claim, the plaintiff claims that she was hired at the pay rate of $19.00 per hour, and later discovered that "minorities with experience" were being paid less than other similarly situated employees, who were making $21.75 per hour.  She then argues that she complained to the human resources department, and to her supervisor Eric Wright "on multiple occasions concerning the difference in pay for minorities with experience."  Ultimately, all employees making $19.00 per hour were given raises in pay to $21.75 per hour.  She also argues that Eric Wright made her feel "uncomfortable" throughout her employment, and that he treated her poorly.  With only these allegations to support her claim for racial discrimination, she concludes that she has established that she "was discriminated against and eventfully [sic] terminated following complaints of unequal pay for minorities."

However, none of these allegations, even when taken as true, and even if treated as if they were supported by evidence, connect Ms. Dawson's status as an African American to her termination from Wheeling Island.  While the plaintiff argues in her brief in response to the defendant's motion for summary judgment that minorities were receiving unequal pay at the time that Ms. Dawson was first hired, she has not raised a claim for unequal pay, but rather for wrongful discharge.  Further, while she argues that

Eric Wright treated her poorly, she has not even presented an argument that his treatment of her was due to her race.  Her conclusory allegations that she has proven that she was discriminated against are insufficient to support this claim.  See Jordan v. Alternative Res. Corp., 458 F.3d 332, 345 (4th Cir. 2006).  Accordingly, the defendant's motion for summary judgment on the plaintiff's claim of wrongful discharge based upon race is granted.

     2.  <u>Retaliatory Discharge</u>

    The plaintiff also claims that she was terminated in retaliation for her complaints regarding unequal pay for minorities.  In order to establish a prima facie case for this claim, the plaintiff must not only present evidence that her termination was causally connected to her complaints about unequal pay, but that the act of lodging such complaints is one that is protected, here by the substantial public policy of the State of West Virginia.  Based upon the policy set forth by Title VII and the WVHRA, if Ms. Dawson's deposition testimony and allegations within her response brief are to be taken as true, this Court believes that a reasonable juror could conclude that her complaints qualify as protected activity.

    Ms. Dawson claims that she believed, after speaking with coworkers, that minorities as a group were being paid less than non-minorities, and that she complained on that basis.  There is

some disagreement as to whether she presented this as the basis for her complaints at the time that they were lodged with the defendant, and whether or not her complaints were truly based in race disparity or whether they were that those with more experience in the industry were making less than they should. However, this Court cannot judge the veracity of sworn statements at this point of the litigation, but instead must make all factual inferences in favor of the plaintiff. <u>Anderson</u>, 477 U.S. at 255 (Federal Rule of Civil Procedure 56(c) does not allow a court to make credibility determinations, to weigh the evidence, or to draw "legitimate inferences from the facts."). Thus, this Court believes that the plaintiff has created a genuine issue of material fact regarding whether her complaints were protected activity. <u>See</u> <u>Burgess v. Bowen</u>, 2012 U.S. App. LEXIS 3300, No. 10-2081 *27 (4th Cir. Feb. 17, 2012) (unpublished) ("An employee's complaint constitutes protected activity when the employer understood, <u>or should have understood</u>, that the plaintiff was opposing discriminatory conduct." (emphasis added)).

However, this Court finds that the plaintiff has failed to create a genuine issue of material fact with regard to a causal connection between her complaints about the pay disparity and her ultimate termination. Ms. Dawson claims that after she complained about the disparity, she "began feeling uncomfortable" around Eric Wright and like "he was retaliating against her." She says that

10

she "felt that everything began going downhill following her complaints of unequal pay." Finally, she also points to the fact that the onset of her disciplinary meetings and "write-ups" occurred only a short time after she lodged her complaints.

This Court finds that none of these allegations are probative of a connection between Ms. Dawson's termination and her complaints. First, throughout Ms. Dawson's brief and her deposition testimony, she is unable to describe any specific reason why she felt "[Mr. Wright] was retaliating" against her. She argues that he spoke to her in a way that made her "uncomfortable" and that he did not give her breaks every two hours as was required. However, there has been no evidence presented to support an argument that Mr. Wright treated the plaintiff any differently than he treated any other employee, or that this treatment only began following her complaints. In fact, Ms. Dawson testified that she knew of other employees who had difficulties with Mr. Wright. Further, Ms. Dawson also testified that she did not have a complaint about any supervisor other than Mr. Wright, but the record evidence shows that other supervisors failed to give breaks every two hours as well, and that Ms. Dawson also had disputes with them over this issue. (<u>See</u> ECF No. 17 *26-27.)

Finally, Ms. Dawson began complaining about her pay shortly after she began working, and had met with the human resources department within three weeks of her start date. Therefore, it is

11

impossible to reasonably infer that Mr. Wright treated Ms. Dawson differently than any other employee or differently than he did prior to her complaints.

The timing argument is also insufficient to allow a reasonable juror to infer retaliatory motive on the part of Wheeling Island. Ms. Dawson's entire employment with the defendant lasted for less than one year.  She lodged her complaints less than one month after beginning her employment.   Accordingly, the fact that the complaints and the disciplinary issues occurred contemporaneously carries little or no weight.  There is no notable amount of time prior to the onset of either of these events to use as a control or baseline as far a disciplinary issues are concerned.  The plaintiff claims that she worked for 30 years in the gaming industry without disciplinary incident prior to her employment with Wheeling Island. However, there is no documentation of this, and too many variables exist with regard to possible reasons why this may be true to allow such testimony to create a genuine issue of material fact here. Accordingly, the timeliness argument is not probative of retaliatory motive.  The defendant is also granted summary judgment on the plaintiff's retaliatory discharge claim.

     3.  <u>Pretext</u>

As a final matter, even if the Ms. Dawson had satisfied her burden to present a prima facie case against the defendant with regard to any of her discrimination claims, the defendant is

nonetheless entitled to summary judgment because the plaintiff has failed to present any evidence which could allow a reasonable juror to find that the defendant's proffered LNDR was a pretext for discrimination.   The defendant has satisfied its burden of production to proffer a LNDR by arguing that Ms. Dawson was terminated due to "inappropriate behavior" and "repeated absenteeism."   The defendant supports this LNDR with affidavit testimony provided by Christine Palmer, the Human Resources Manager for Wheeling Island, as well as with multiple employee counseling records, attendance records, and written statements of coworkers and other witnesses regarding disciplinary incidents which occurred throughout Ms. Dawson's employment with Wheeling Island.

Ms. Dawson attempts to rebut this LNDR by arguing that she had 30 years of experience in the gaming industry and had never been subject to discipline in the past.   She also contends that the incidents cited by defendant were framed incorrectly to make Ms. Dawson look bad, and that employees with significantly less experience than her were essentially telling her what to do, and were receiving better performance marks than her, and that this was unfair.   As for the absences, while Ms. Dawson disputes the number of times that she called off from work, she admits that she did call off from work at least some of the times that Wheeling Island claims that she did.

However, the record reveals that none of the incidents for which Ms. Dawson was disciplined were contrived.  While Ms. Dawson claims to have no memory of any of the employee counseling sessions of which the defendant has produced evidence, she admits within her deposition that each of the incidents occurred, although she disagrees with Wheeling Island's interpretation of them.  Further, Ms. Dawson's own testimony reveals that she agrees that she "raised her voice" with supervisors and that she refused to complete projects which were required of her because she felt that she was not paid enough to do so.  She also admits that she was angry that she was evaluated by people who had less experience in the industry, and that she refused to evaluate others because she did not want to give people with less experience "a good evaluation when I had a lousy evaluation."  (ECF No. 17 *26.)  Accordingly, while Ms. Dawson may not agree that it was fair for the defendant to terminate her, and while she may have never experienced disciplinary issues in any of her previous 30 years in the gaming industry, she has failed to produce any evidence that Wheeling Island's pronounced grounds for disciplining and ultimately terminating her were false, or that they were a pretext for any underlying purpose.

B.   Count II

This claim asserts a violation of the WVHRA in the form of disability discrimination.  In order to successfully defeat summary

judgment with regard to this claim, Ms. Dawson must present sufficient evidence to allow a reasonable juror to conclude that she is "disabled" under the meaning of that term in the WVHRA. A "disabled" person in the WVHRA is "a person who has one or more physical or mental impairments that substantially limits one or more major life activities . . ." Stone v. St. Joseph's Hosp. of Parkersburg, 208 W. Va. 91, 102 (2000).

In order for an impairment to "substantially limit" an activity, it must significantly restrict "the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition manner or duration under which the average person in the general population can perform that same activity." Hoops v. Elk Run Coal Co., Inc., 95 F. Supp. 2d 612, 617 (S.D. W. Va. 2000). The defendant maintains that Ms. Dawson does not have a disability under this definition because the only ailment to which the plaintiff points is hypertension. The defendant contends that simply because Ms. Dawson felt lightheaded as a result of her hypertension does not mean that she was "substantially limited" in her ability to perform any "major life activit[ies]." Further, while Ms. Dawson claims that she had a doctor's note indicating that she was suffering from hypertension at the time of the incident which led to her termination, she testified in her deposition that the note only indicated that she was being treated for hypertension, not that she was at all limited

15

due to this condition.  Ms. Dawson further testified that at this time, she had been released by her doctor to return to work full time.

The plaintiff offers no retort to these contentions, but only conclusory statements that, because Ms. Dawson had undergone surgery for which she missed roughly one month of work, and because she developed high blood pressure after suffering from a mini-stroke, she "obviously was a member of multiple protected classes." Such an unsupported legal conclusion cannot serve to support the plaintiff's claim that she was disabled at the time of the incident which led to her termination.

In Ms. Dawson's deposition, she testified that she was "lightheaded" and that she was afraid that she may pass out.  While this contention could arguably be considered a showing of limitation, the plaintiff offers no evidence or testimony to support a reasonable conclusion that her lightheadedness substantially limited her ability to perform major life activities. A showing of mere limitation is insufficient to establish that a plaintiff is "disabled" under the law.  In order to make such a showing, it is crucial that a plaintiff present evidence that the limitation had an actual effect on one or more of her major life activities in order to qualify as "disabled" under the law. Lyons v. Shinseki, 2011 U.S. App. LEXIS 23077, No. 11-1361 (4th Cir. Nov. 17, 2011) (unpublished) ("Standing alone, an impairment is not

16

sufficient to establish a disability; the employee also must prove the impairment substantially limits a major life activity.").   The only claim raised by the plaintiff which could even be construed as a factual allegation in this regard is that she was "unable to stand during her shift."   However, this statement is unsupported by the evidence.   While Ms. Dawson did testify that she felt lightheaded on the day of the incident which led to her termination, she never stated that she was unable to stand, and in fact she did stand for much of her shift that day.

Thus, this Court cannot ascertain any genuine issue of material fact as to Ms. Dawson's status as a disabled individual under the WVHRA.   The plaintiff presents no evidence which could support that her hypertension and the resulting lightheadedness substantially limited any major life activity.   Thus, Dawson is not a disabled person under the WVHRA, and cannot maintain a claim for disability discrimination.   Further, even if the plaintiff could be considered disabled under the law, she has failed to rebut the defendant's LNDR as stated above.

C.   Count III

Count III is a claim of hostile workplace based upon Ms. Dawson's race.   In order to sustain a hostile work environment claim under West Virginia law, the plaintiff most show "(1) that the subject conduct was unwelcome; (2) it was based on the [race] of the plaintiff; (3) it was sufficiently severe or pervasive to

alter the plaintiff's conditions of employment; and (4) it was imputable on some factual basis to the employer." Fairmont Specialty Servs. v. W. Va. Human Rights Comm'n, 206 W. Va. 86, 95 (1999).  The plaintiff in this case seems to point to two separate types of "subject conduct" which she alleges amounts to hostile work environment.  First, she alleges hostile work environment with regard to Eric Wright's behavior toward her throughout her employment, and secondly, she argues that the associate counseling sessions to which she was subjected throughout her eight month employment qualify as hostile work environment.  This Court finds that the plaintiff has failed to create a genuine issue of material fact with regard to both of these allegations.

The plaintiff fails to produce any evidence that Mr. Wright treated Ms. Dawson any differently than he treated any other coworkers, specifically, any coworkers of different races. Further, beyond Ms. Dawson's testimony that she felt as if Mr. Wright was retaliating against her for complaining about unequal pay for minorities, she gives no testimony that could link Mr. Wright's behavior to her race.  In fact, Ms. Dawson even testified at her deposition that she did not believe that anything other than the pay discrepancy occurred due to her race.[3]  (ECF No. 13 Ex. 1 *25.)

---

[3]As noted above, Ms. Dawson complaint does not raise a claim of unequal pay.

18

Ms. Dawson also fails to make any allegation which could possibly lead to a reasonable conclusion that Eric Wright's behavior rose to the level of being "severe and pervasive enough to alter the terms and conditions of her employment." The only behavior to which she could testify was that Mr. Wright made her feel "uncomfortable" and that he would not allow her to take breaks as often as the employee handbook stated that he should. These allegations, as a matter of law, fail to rise to the level necessary to create a hostile work environment. When pressed in her deposition to describe Mr. Wright's behavior which she found unacceptable, her response was only that he made her feel uncomfortable and that she had complaints about "the way he talked to me and just, you know, like neglecting to send me to the nurse when I asked to go there. Just little things like that. And no break, you know." The plaintiff offers no examples of how Mr. Wright made her feel uncomfortable, nor of how he spoke to her, and according to the record, the incident where Mr. Wright would not allow her to go to the nurse only occurred once. The inquiry into this prong of the hostile workplace claim is both subjective and objective. <u>Ocheltree v. Scollon Prods.</u>, 335 F.3d 325, 333 (4th Cir. 2003). Not only must the plaintiff actually feel that the work environment is abusive and hostile, which this Court believes that the plaintiff has alleged, but the environment must also be abusive and hostile from an objective point-of-view. <u>Id.</u> Given

19

the plaintiff's vague testimony aside from an incident which occurred only once,[4] and the lack of further evidence of Mr. Wright's behavior, a reasonable juror could not conclude that the plaintiff has shown that it rose to the level needed to sustain a hostile work environment claim.

The plaintiff also argues that she had worked in the gaming industry for 30 years prior to beginning her employment at Wheeling Island, and had never been subject to discipline before, so her discipline at Wheeling Island constituted a hostile workplace. This allegation fails to establish a genuine issue of material fact as well. Ms. Dawson does not even allege that her counseling sessions were a result of her race, and as stated above, she affirmatively denies that in her deposition testimony. Further, the plaintiff fails even to satisfy the "severe and pervasive" requirement with regard to this allegation. In her deposition, Ms. Dawson continually testified that she could not even recall the occurrence of most of the employee counseling sessions, let alone that she subjectively found them to be so abusive that it altered the terms of her employment. Accordingly, Ms. Dawson's hostile work environment claim must be dismissed.

---

[4]Conduct must be both "severe" and "pervasive." While the more severe an incident, the less pervasive it must be to qualify, an isolated incident must be "extremely serious" to "amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

D.   <u>Count IV</u>

Count IV is a claim for breach of contract.  Ms. Dawson claims that she had an agreement with the defendant wherein she agreed to return $2,500.00 in moving expenses provided to her by the defendant if she did not maintain her employment at Wheeling Island for one year.  She claims that this agreement was breached when she was terminated less than one year after she began her employment. The defendant argues that this agreement "in no way . . . compel[led] either Ms. Dawson to work for Wheeling Island for one year, or for Wheeling Island to employ Ms. Dawson for one year." The defendant also avers that it has not, and has no intention to, enforce the agreement against Ms. Dawson.

The plaintiff alleges that this associate repayment agreement, coupled with an alleged "oral representation that Plaintiff Dawson was being hired for one year" constitute a binding contract.  This Court cannot agree.  The plaintiff's deposition testimony that she was hired for one year, and that she could not terminate her employment until after that time, is in direct contravention of the clear and unambiguous language of the associate repayment agreement.  At the end of the agreement, just above the line bearing Ms. Dawson's signature, the agreement states:

> This Agreement does not constitute an employment contract for a definite term.  The Associate may, at any time, terminate the employment relationship with or without cause and with or without notice, and the Company may, at any time, terminate the employment relationship with or without cause and with or without notice.

(ECF No. 15 *49.)

When contract terms are clear and unambiguous, it is a well settled principle that "parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, written instrument in the absence of fraud, accident or mistake in its procurement." Wood County Airport Auth. v. Crown Airways, 919 F. Supp. 960, 966 (S.D. W. Va. 1996). Here, Ms. Dawson does not claim that the terms of the associate repayment agreement are ambiguous, nor does she claim that the agreement was the result of fraud, accident or mistake. In fact, Ms. Dawson does not address this term of the agreement whatsoever.

This Court finds that the terms of that agreement are unambiguous and clear. Accordingly, this Court finds that no contract of employment for any specific time existed between the plaintiff and the defendant, and that she was an at-will employee for the duration of her employment. The defendant's motion for summary judgment on Count IV is granted.

E.   Count V

Count V of the complaint raises a claim of intentional infliction of emotional distress. This claim, too, is insufficiently supported by facts and must be dismissed. The only support given for this claim is that in the 30 years that Ms. Dawson spent in the casino industry, she "had never been treated as

poorly as by Defendant Wheeling Island." Further, the plaintiff testified that as a result, she does not "really want to be a manager anymore," does not "want to train anymore," and that Wheeling Island "broke [her] spirit for the job that [she] loved so long." (ECF No. 17 *44.)

However, intentional infliction of emotional distress requires that a plaintiff provide evidence that she suffered "severe emotional distress" in order to be successful. Marlin v. Bill Rich Constr., 198 W. Va. 635, 652 (1996) ("A claim for emotional distress without an accompanying physical injury can only be successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious and upon a showing that the emotional distress is undoubtedly real and serious."). In order for emotional distress to rise to the level of "severe," it must be such that "no reasonable person could be expected to endure it." Travis v. Alcon Lab. Inc., 202 W. Va. 369, 375 (1998). Mere insults, indignities and hurt feelings cannot lead to liability. Id. Accordingly, Ms. Dawson's allegations do not rise to the level of "severe emotional distress" as a matter of law. This Court cannot allow Ms. Dawson's claim of emotional distress to go before a jury based simply upon her testimony that she is no longer interested in management and training positions, even if she used to enjoy them and no longer does as a result of her experiences at Wheeling Island. See Tanner

23

v. Rite Aid, 194 W. Va. 643, 651-52 (1995) ("where no physical injury accompanies the wrong, the tort of outrage is a slippery beast, which can easily get out of hand without firm judicial oversight." (internal citations omitted)).

Further, the plaintiff has failed to even allege any specific conduct on the part of the defendant which she believes rises to the high level of "outrageousness" required to sustain a claim of intentional infliction of emotional distress. Such "outrageousness" is "more than unreasonable, unkind or unfair, [but] truly offend[s] community notions of acceptable conduct." Philyaw v. E. Associated Coal Corp., 219 W. Va. 252, 258 (2006). Here, the plaintiff simply claims that the "conduct of and treatment by Defendant Wheeling Island" was the worst that she had ever experienced. However, without any factual allegation of specific instances of outrageous behavior, no reasonable juror could conclude that Wheeling Island's treatment of the defendant rose to the level necessary to sustain this claim. Thus, summary judgment must be granted to the defendant on this count.

F.   Count VI

Count VI of the complaint raises an age discrimination claim. The defendant claims that the plaintiff has failed to support this claim, which follows the same proof framework as the claims in Count I, because, while she is within the protected age group of

24

individuals over the age of 40,[5] she was terminated when she was only one year older than she was when she was hired and was terminated by the exact manager who initially hired her.   The plaintiff did not respond to these contentions, and in fact offered no response whatsoever to the defendant's motion to dismiss Count VI.   Therefore, under <u>Celotex</u> and <u>Anderson</u>, she has failed to support her claim with facts showing that there is a genuine issue of material fact for trial.   477 U.S. 317; 477 U.S. 242.   The plaintiff "may not rest upon the mere allegations or denials of his pleading" to defeat summary judgment.   <u>Anderson</u>, 477 U.S. at 256. Thus, summary judgment must be granted to the defendant on this claim as well.

## IV.   <u>Conclusion</u>

For the reasons stated above, the defendant's motion for summary judgment is GRANTED in its entirety.   Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.   Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

---

[5]Ms. Dawson was 51-years-old when she was terminated from Wheeling Island.

DATED:     April 16, 2012


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE